IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DUSTIN J. MERRYFIELD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DON JORDAN, et. al., )<br>)<br>Defendants. )<br>_____) | Case No. 09-3259-JAR |

## MEMORANDUM AND ORDER

Plaintiff Dustin J. Merryfield is confined at Larned State Hospital ("LSH") under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01, *et seq.*, as a resident of the Sexual Predator Treatment Program ("SPTP"). He brings this civil rights action pursuant to 42 U.S.C. § 1983, *pro se* and *in forma pauperis*, seeking declaratory and injunctive relief for claimed violations of his constitutional rights as plead in three counts: 1) First Amendment rights to send mail/access the court; 2) Fourteenth Amendment right to due process; and 3) First Amendment right to present grievances. This matter is before the Court on the Joint Motion to Dismiss (Doc. 23) filed by defendants Don Jordan, Cory Turner and Linda Kidd and the Motion to Dismiss (Doc. 33) filed by defendant Leo Herrman. Plaintiff has responded to these motions and the Court is prepared to rule. For the reasons explained in detail below, defendants' motions to dismiss are granted.

**I.    Plaintiff's Complaint**

The named defendants are Don Jordan, Secretary of Kansas Social and Rehabilitation Services ("SRS"); Linda Kidd, Unit Leader; Cory Turner, Administrative Program Director;

Marilyn Perez, Therapist; and Leo Herman, Administrative Program Director. All defendants are alleged to have acted under color of state law. Although the Complaint does not specify whether defendants are sued in their individual or official capacities, plaintiff clarifies in his response brief that he seeks only declaratory and prospective injunctive relief from defendants in their official capacity.[1]

Liberally construed and briefly stated, plaintiff alleges in Count I that he petitioned the Pawnee County District Court for judicial review pursuant to K.S.A. § 77-601. After his petition was dismissed, plaintiff attempted to appeal to the Kansas Court of Appeals, but his petition was dismissed as untimely. Plaintiff alleges that he missed his appeal deadline because of the time it took LSH to mail his petition. Plaintiff further claims in Counts II and III that the disciplinary and administrative grievance process within the SPTP at LSH is inadequate and deprives him of due process.

## II. Eleventh Amendment

Plaintiff's claims are brought against all defendants in their official capacity. In all respects other than name, an official-capacity suit is a suit against the entity.[2] Thus, plaintiff's suit against defendants is equivalent to an action against the State, and, as defendants assert, the Court must examine whether the Eleventh Amendment bars plaintiff's official capacity claims against them.[3] This issue challenges the court's subject matter jurisdiction, and is generally

---

[1] In light of plaintiff's clarification, defendants have withdrawn their qualified immunity defense (Doc. 27 at 2 n.1).

[2] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Moore v. City of Wynnewood*, 57 F.3d 924, 929 n.4 (10th Cir. 1995).

[3] The State of Kansas has not waived immunity under 42 U.S.C. § 1983, nor has its immunity been abrogated for § 1983 lawsuits. *See Sanders ex rel. Rayl v. Kan. Dept. of Soc.& Rehab. Servs.*, 317 F. Supp. 2d 1233, 1241 (D. Kan. 2004).

considered as a Rule 12(b)(1) motion to dismiss.[4] A defendant asserting Eleventh Amendment immunity bears the burden of proof on that issue.[5]

The Eleventh Amendment grants the states absolute immunity from suits brought by individuals in federal court.[6] This includes actions for damages against a State, its agencies and its officials acting in their official capacities.[7] There are exceptions to the general rule of immunity, including the doctrine announced in *Ex Parte Young*,[8] where an individual seeking only prospective injunctive relief for ongoing violations of federal law may bring suit against state officials in federal court.[9] The reasoning behind the *Ex Parte Young* exception is that if an official has performed his duties in a way that contravenes either the Constitution or a federal law, he does so outside the cloak of state authority, thus a suit against him does not impact the State in its sovereign or governmental capacity.[10]

The Tenth Circuit follows a four-part test to determine whether the *Ex Parte Young* doctrine should be applied:

> First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or

---

[4]*Id*. at 1240.

[5]*Id*. at 1241.

[6]*Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

[7]*See Kentucky v. Graham*, 473 U.S. 159, 165-67, n.14 (1985); *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993).

[8]209 U.S. 123, 159-60 (1908).

[9]*See Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 856 (10th Cir. 2003) (reviewing exceptions to general rule of immunity).

[10]*Id*. at 866.

analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interests."[11]

This doctrine requires that there "be an ongoing violation of federal law" and that it apply "only to prospective relief" and not "to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past."[12] The requirement that the relief sought be permissible prospective relief not analogous to a retroactive award of damages impacting the state treasury is "not a game in semantics"; rather, the "overriding question is . . . whether the relief will remedy future rather than past wrongs."[13]

Defendants argue that *Ex Parte Young* does not apply because plaintiff's Complaint alleges no ongoing violation of any federal right by any defendant. The Court reviews each of plaintiff's claims in turn, keeping in mind that because plaintiff pursues his action *pro se*, it must remain mindful of additional considerations. A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers.[14] Thus, if a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[15] However, it is not "the proper function of the

---

[11]*Id*. (quoting *Robinson v. Kansas*, 295 F.3d 1183, 1191 (10th Cir. 2002).

[12]*Sanders ex rel. Rayl v. Kan. Dept. of Soc.& Rehab. Servs.*, 317 F. Supp. 2d 1233, 1243 (D. Kan. 2004) (quoting *Buchwald v. N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998)).

[13]*Id*. (citing *Chaffin*, 348 F.3d at 867) (quotation omitted).

[14]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 1972)).

[15]*Id.*

4

district court to assume the role of advocate for the *pro se* litigant."[16]  For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[17] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[18]

A.  **Interference with Mail/Access to Courts**

Plaintiff has not challenged or responded to defendants' motions to dismiss Count I. Nevertheless, the Court briefly addresses plaintiff's claim that his right to access the courts was violated by defendants' interference with outgoing mail.  Plaintiff describes the outgoing mail system as follows: he placed an envelope containing his appeal materials into the "aide station," where it was picked up by the person designated as the mail/property officer, who takes the mail to a mail room to be weighed and priced.  Next, pursuant to instructions from Cory Turner, the mail goes to Linda Kidd, who types up and signs the forms necessary to apply postage to the envelopes.  Once this task is completed, Kidd brings the envelopes to plaintiff to sign, whereupon the mail is returned to the mail/property officer to be taken to the mail room to have postage affixed and the item mailed.  Plaintiff contends that this lengthy process caused his legal mail to be late, thereby denying him access to the court.  Plaintiff alleges that this system has caused him harm in other cases because he has to wait until Kidd "can fit it into her schedule" to mail his items and that Jordan has a duty to handle the ministerial duties of the SPTP, including the duty to ensure plaintiff's right to access the courts is not blocked or hindered in any manner.

---

[16]*Id.*

[17]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[18]*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

5

Plaintiff seeks an order requiring defendants to process and mail any and all legal mail requests within twenty-four hours.

The Supreme Court has recognized that prisoners and detainees have protected First Amendment interests in both sending and receiving mail,[19] as well as a Sixth Amendment right of access to the courts.[20] A claim that court access has been impeded by interference with legal mail requires the plaintiff to describe intentional acts by the person handling his mail.[21] An isolated incident where access to the courts is impeded by mere negligence, as when mail is inadvertently lost or misdirected, does not give rise to a constitutional violation.[22] Here, plaintiff alleges that officials mishandled or delayed one piece of outgoing mail. Plaintiff does not allege that LSH procedures governing outgoing mail constitute a deliberate or intentional impediment resulting in an ongoing violation of his right of access, or that the procedures will result in similar problems for plaintiff in the future. As the materials attached to his Complaint demonstrate, plaintiff has successfully perfected multiple legal actions and appeals without incident, and he does not otherwise allege any ongoing violation of his right to access the courts. Accordingly, Count I is dismissed.

**B. Disciplinary Due Process**

Count II deals with a Disciplinary Due Process System, and complains of a "write up" plaintiff received from Marilyn Perez for an incident on June 10, 2008, which appears to have

---

[19]*See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987).

[20]*Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).

[21]*Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005).

[22]*Id*.

resulted in sanctions in the form of twenty-four hours restriction and a reduction of his security level to 0.[23] Plaintiff outlines the due process hearing and subsequent appeals process, where Hearing Officer Mitchell, Program Director Herman, and Superintendent Schutter upheld the disciplinary action. Plaintiff then appealed the decision to Secretary Jordan, who upheld the lower decision. Plaintiff asserts defendants violated his due process rights for any punishment other than a security level drop; defendants failed to follow RIGHT-106; he was denied the right to confront and cross-examine any witnesses against him, and to present favorable evidence and witnesses; he was denied legal counsel; and he did not receive advance notice of the hearing date. Plaintiff asserts that KDOC inmates, in contrast, are afforded all the requisite due process and requests a decision concerning the rights of a sexually violent predator ("SVP") so as to prevent his rights from being "trampled in the future."[24]

Plaintiff's claims are, for the most part, too conclusory to state a federal due process violation. In support of his claim that there is no adequate disciplinary process, plaintiff refers to only one specific disciplinary incident involving him. He provides no description of the actual disciplinary charge or charges against him. Further, the Complaint fails to state a claim of procedural due process, as it fails to allege facts demonstrating that plaintiff has a liberty interest in being at a particular phase level of the SPTP program.[25] The Court notes that plaintiff's claim

---

[23](Doc. 1 at 8.)

[24]Plaintiff appears to acknowledge that the due process safeguards employed at LSH for the SPTP have been held to comply with the due process rights afforded to an inmate during a prison disciplinary proceeding, and requests a decision with respect to the rights of SVP's. *See Merryfield v. Turner*, 191 P.3d 1137, 2008 WL 4239118, at *5 (Kan. Ct. App. 2008) (table) (citing *Dawson v. Bruce*, 138 P.3d 1234, 1236 (Kan. Ct. App. 2006)).

[25]S*ee Burch v. Jordan*, 07-3236-JAR, 2010 WL 5391569, at *18 (D. Kan. Dec. 22, 2010) (citing *Williams v. DesLauriers*, 172 P.3d 42, 48 (Kan. Ct. App. 2007)) (holding that a resident's status and privileges are conditioned on compliance with the rules and policies of the SPTP, and there is no protected liberty interest in being on a particular phase level of the SPTP).

7

is based on his assumption that behavior treatment or classification decisions, which result in varying degrees of security and available privileges, are disciplinary "punishment" necessitating due process protections, including notice and a hearing. The SPTP is intended to modify behavior, treat plaintiff, and protect other SPTP residents; plaintiff's security level reduction is rationally related to those institutional objectives, and therefore, is not "punishment" under the Due Process Clause.[26] Furthermore, the Complaint does not identify any fundamental rights that were affected by the reduction in plaintiff's security level. Because there is no liberty or property interest at stake, plaintiff has no basis for a procedural due process challenge. Moreover, plaintiff admits he was notified of his phase level reduction and was given the opportunity to appeal that decision. Accordingly, Count II is dismissed.

### C. Administrative Grievances

By statute, the SPTP must allow patients the right to present grievances without fear of retaliation.[27] Plaintiff contends that although he has access to a system in which he can present administrative grievances, the system is constitutionally inadequate and violates his rights under the First Amendment. Plaintiff claims his right to access to an adequate administrative grievance system is codified in several Kansas statutes and administrative regulations, as well as the First Amendment. He alleges that many review procedures in place have been denied and taken away by defendants; that he does not have adequate time to seek relief; that the grievance procedure is emotionally and physically draining, with strict consequences for non-compliance; no interim relief is available; review is not impartial; his grievances are futile and not taken seriously;

---

[26]*Id*.

[27]K.S.A. § 59-29a22(b)(21) (2009).

enforcement is limited to SRS, not LSH; his request must be taken to the person who originally made the adverse decision, *e.g.*, staff, treatment team, maintenance; and he has been denied "several court actions in Pawnee County due to not having administrative relief finalized," thus delaying his right to justice. Plaintiff lists ten criteria that he asserts are required in order for an administrative relief/grievance system to pass constitutional muster, and argues that these criteria are not provided in the present system in place within the SPTP at LSH.[28]

Defendants contend that the exception does not apply because plaintiff has identified no federal constitutional right to an institutional grievance procedure and fails to allege how injunctive relief as against any named defendant would afford him a proper remedy for some claimed violation. The Court agrees. Plaintiff is alleging statutory, not constitutional violations.[29] Plaintiff has not alleged how any failure in the grievance procedure has resulted in an actual violation of his constitutional rights. Even taken as true, plaintiff's allegations do not state a deprivation of federal law, as there is no federal constitutional right to an institutional grievance procedure.[30] Thus, to the extent plaintiff seeks relief for alleged violations of state statutes and regulations, he has failed to state a cognizable claim under § 1983.[31] Accordingly, the Court finds no ongoing federal constitutional violation, and Count III is dismissed.

---

[28](Doc. 1 at 13-14.)

[29]*See Merryfield v. Kan. Soc. & Rehab. Servs.*, No. 104,044, 2010 WL 5490755, at *4 (Kan. Ct. App. Dec. 23, 2010) (holding no constitutional violation for claim of inadequate grievance procedures brought in context of K.S.A. § 60-1501 petition).

[30]*See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Merryfield v. Turner*, 09-3130-SAC, 2010 WL 559730, at *2 (D. Kan. Feb. 16, 2010); *Merryfield v. Turner*, No. 100,059, 2008 WL 423118, at *5 (Kan. Ct. App. Sept. 12, 2008).

[31]*Merryfield v. Schearrer*, 07-3288-SAC, 2008 WL 4427656, at *6 (D. Kan. Sept. 25, 2008) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002).

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motions to Dismiss (Docs 23, 33) are GRANTED. Plaintiff's Complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

Dated: February 3, 2011

                                               S/ Julie A. Robinson
                                               JULIE A. ROBINSON
                                               UNITED STATES DISTRICT JUDGE